**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

AMERICAN HERITAGE LIFE
INSURANCE COMPANY,

    Plaintiff,

v.                                        Case No. 3:19-cv-310-TJC-JRK

KIRK JOHNSTON,

    Defendant.

## **O R D E R**

This case is before the Court on Plaintiff American Heritage Life Insurance Company's Motion for Summary Judgment. Doc. 52. Defendant Kirk Johnston filed a Memorandum of Law in Opposition. Doc. 58. American Heritage then filed Objections to and Motion to Strike Portions of Defendant's Summary Judgment Evidence. Doc. 61. Johnston filed a Response to the Motion to Strike, and American Heritage filed a Reply. Docs. 71, 74.

**I.    BACKGROUND**

American Heritage sells supplemental voluntary insurance policies, such as life or cancer insurance, which employers offer their employees in addition to standard health insurance. Doc. 52 at 2. Johnston worked for approximately four months in an insurance office that primarily sold Allstate Insurance Company policies, but also sold American Heritage policies. Id. at 3. While

Johnston was originally only authorized to sell Allstate policies, on December 13, 2017 he signed an Agent Agreement with American Heritage to "solicit, procure and transmit" American Heritage policy applications. Doc. 53-1 at 3 ("Agent Agreement"). The Agent Agreement included a schedule of commissions for policies sold and a list of conditions to receive any commissions. Id. at 3–12. Those conditions included that the agent "shall not be entitled to compensation on any policy unless [American Heritage] determines, in its sole discretion, that [the agent] was the efficient procuring cause of the policy." Id. at 4. The Agent Agreement lasted until January 20, 2018, when Johnston's employment at the insurance office ended. Doc. 53-6 at 19:8–14.

Johnston filed a suit against American Heritage in Texas in July 2018, alleging that the insurer had not given him commissions for his solicitation of accounts with eight companies: Energy Transfer, Winzer Corporation, Control Flow, Inc., Independent Marketing Alliance, Armco Erectors, Lone Star College System, Hewlett Packard, and Kroger Company. Doc. 1 at 4. American Heritage, which has its principal place of business in Jacksonville, Florida, removed the case to the Southern District of Texas and then filed a Motion to Dismiss or, in the alternative, Transfer Venue. Doc. 9, Johnston v. American Heritage Life Ins. Co., 3:19-cv-00025-MMH-PDB (M.D. Fla.). In January 2019, the Southern District of Texas transferred the case to the Middle District of Florida. Doc. 12, 3:19-cv-25. The Honorable Marcia Morales Howard ordered

2

that Johnston file a second amended complaint to correct the original complaint's deficiencies, and then issued an Order to Show Cause when Johnston failed to file an amended complaint. Doc. 27, 3:19-cv-25. Instead of responding to the Order to Show Cause, Johnston filed a notice of voluntary dismissal. Doc. 28, 3:19-cv-25. The case was dismissed on February 28, 2019. Doc. 29, 3:19-cv-25.

American Heritage filed the present complaint on March 15, 2019 seeking a declaratory judgment that it is not liable to Johnston for any commissions or compensation under the Agent Agreement. Doc. 1 at 6. On August 31, 2020, American Heritage filed its Motion for Summary Judgment, asking the Court to declare that American Heritage "has no obligation or liability to pay Johnston commissions on policies (1) not procured by him, (2) issued pursuant to applications procured by other agents or producers, or (3) which were not issued." Doc. 52 at 1. American Heritage provided depositions and contractual agreements in support. Docs. 53-1–6.

Johnston's only evidence cited in support of his Response in Opposition was his own Affidavit. Doc. 58-1. American Heritage moved to strike the Affidavit for containing inadmissible evidence. Doc. 61. Johnston filed a belated Response with an Amended Declaration that added detail to his original claims. Docs. 71; 71-1.

## II. DISCUSSION

### A. Parties' Arguments

American Heritage submitted two declarations stating that Johnston did not procure any insurance policies that it issued. Doc. 52 at 7 (citing Declaration of Bell (Doc. 53-1), Declaration of Anderson (Doc. 53-2)). In fact, American Heritage has "not paid any commission to any broker" for seven of the eight companies for which Johnston alleged he was owed a commission. Doc. 53-1 at 1. American Heritage argues that under the terms of the Agent Agreement, it does not owe Johnston any compensation. In support, it cites clauses of the Agent Agreement, including:

> Producer shall receive no compensation for premiums on insurance policies issued pursuant to applications procured by other producers….
>
> Producer shall not be entitled to compensation unless [American Heritage] determines, in its sole discretion, that Producer was the efficient procuring cause of the policy. In all cases where a claim to compensation is disputed or questioned, the decision of [American Heritage] shall be binding and conclusive.

Doc. 53-1 at 4. American Heritage also points to Johnston's deposition, where Johnston could not recall the name of a single policyholder to whom American Heritage issued a policy, or the number of applications he submitted. Doc. 53-3 at 28:10–13, 68:24–69:4. Johnston did not obtain an agreement from any policy group, did not collect any premiums, and did not enroll any employees in any

4

insurance groups. Id. at 70:15–71:5. Johnston's employer Odis Mack confirmed that Johnston did not submit any applications or enroll any employees in any American Heritage insurance groups. Doc. 53-6 at 20:14–21:1.

American Heritage did issue insurance policies for two of the companies Johnston names, Kroger Company and Energy Transfer, but it demonstrates that Johnston was not involved in the sales. Doc. 52 at 21. In the five weeks he was authorized to sell American Heritage policies, Johnston never had an in-person meeting with Kroger, nor did he provide specific pricing or marketing materials. Doc. 53-3 at 105:6–109:13. He never sent insurance applications or agreements from Kroger to American Heritage. Id. at 111:15–22. Likewise, he was not responsible for any policy applications from Energy Transfer, a pre-existing American Heritage client. Johnston stated in his deposition that he was not claiming that he was entitled to commissions from business that another insurance agency, Gallagher, had solicited from Energy Transfer. Id. at 104:21–25. An executive at Energy Transfer had no awareness of Johnston, much less of any plans to assign Energy Transfer's contract to Johnston. Doc. 53-4 at 11:20–14:22.

Johnston's Response argues that he was entitled to commissions despite not having submitted any insurance policy applications to American Heritage because his high-level connections to executives at the eight companies he named were critical to American Heritage obtaining their business. Doc. 58 at

5

1. He argues that he "could have made substantial money just from becoming the agent of record on an existing account." Id. at 2. He does not explain how this applies to companies as to which American Heritage did not obtain any customers, or how this argument fits within the plain meaning of the Agent Agreement. Johnston argues that he needs further discovery because "[a]ll records are in the possession and control of [American Heritage] and no records exist with Johnston."[1] Id. at 2. In support of his Response, Johnston provides a three-page Declaration that states that "in every company listed I had contacted a decision maker and was in the process of presenting information for their consideration." Doc. 58-1 at 1. The Declaration explains that he learned that "a sale was made to Kroger," and that he was told that an American Heritage broker was pressing for Johnston's removal. Id. at 2. He argues "I did my job according to my contract in regards to Kroger Company," and therefore he is entitled to commissions from Kroger accounts. Id. at 3. He also argues that he would have been made the agent of record on the Energy Transfer account if he had not left his position. Id. He states in his Amended Declaration that in

---

[1] Johnston argues that discovery revealed information that was key to a counter-claim. Doc. 58 at 4. Johnston's Declaration argues that "[f]urther depositions are essential based on" information he learned regarding another broker within the insurance company. Doc. 58-1 at 2. He does not explain why a discovery period of over a year was insufficient, why he did not move for an extension, why he did not bring a timely counter-claim, or why he did not present any evidence from discovery in support of his Response beyond his own Declaration.

6

his "understanding," "Tom Long, CFO," of Energy Transfer, who happened to be "[o]ne of [his] father's best friends," "authorized [him] becoming agent of record and bringing all products in . . . ."[2] Doc. 71-1 at 2. He did not provide any documents to support his statements, or copies of any depositions taken during discovery, including his own, despite his attorney being present at each of the Plaintiff's three depositions. Docs. 53-3; 53-4; 53-6.

B. Analysis[3]

American Heritage provided the Agent Agreement that Johnston signed and does not dispute. Doc. 53-1. The Agent Agreement states that regardless of

---

[2] Johnston submitted a lengthier Affidavit in his Response to American Heritage's Motion to Strike, which he argues "provides the specificity that Plaintiff complains is lacking from his original Affidavit . . . ." Docs. 71 at 4; 71-1. The Amended Declaration adds further detail to Johnston's initial attestations but does not provide any external evidence for Johnston's statements, which are based on conjecture and rank hearsay.

[3] In a motion for summary judgment, the burden is initially on the movant to demonstrate that there is no genuine issue of material fact, and that a reasonable jury could not rule in the non-movant's favor. See Fed. R. Civ. P. 56(a). When "the movant shows 'an absence of evidence to support the nonmoving party's case,' the burden then shifts to the non-moving party to demonstrate that there are, in fact, genuine disputes of material facts." Blitz Telecom Consulting, LLC v. Peerless Network, Inc., 151 F. Supp. 3d 1294, 1301 (M.D. Fla. 2015) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). The Court does not make "[c]redibility determinations," "weigh[. . .] the evidence," or "draw[. . .] legitimate inferences from the facts . . . ." Strickland v. Norfolk S. Ry. Co., 692 F.3d 1151, 1154 (11th Cir. 2012). However, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). As the non-movant, Johnston bears the burden to "come forward with specific facts showing that there is a genuine issue for trial." Id. at 587 (emphasis and internal quotation marks omitted). After there

any role of any other agent in procuring policies, only the agent who American Heritage, in its "sole discretion," determines is the "efficient procuring cause of the policy" is entitled to compensation. Doc. 53-1 at 2.

The undisputed evidence demonstrates that American Heritage has not sold policies to six of the companies Johnston allegedly contacted. As for the two remaining companies, Kroger and Energy Transfer, American Heritage presented evidence that Johnston is not entitled to a commission based on the Agent Agreement. Johnston confirmed that he only had an "initial meeting" with Kroger Company. Doc. 53-3 at 113: 22. And American Heritage has shown that it already had a contract with Energy Transfer with an already-existing agent of record. Doc. 53-4 at 4–5.

Johnston alleges that he understood that the CFO of Energy Transfer intended to make him the agent of record on the account, citing his own understanding and hearsay statements. Doc. 71-1 at 2. Because an affidavit in support of summary judgment "must be based on personal knowledge, an affidavit based on nothing more than 'information and belief' is not sufficient as a matter of law." Story v. Sunshine Foliage World, Inc., 120 F. Supp. 2d 1027, 1030 (M.D. Fla. 2000). Statements that are not admissible at trial are struck

---

has been "adequate time for discovery and upon motion," the Court must grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case . . . ." Celotex, 477 U.S. at 322.

8

from an affidavit submitted with summary judgment pleadings. See Broughton v. Sch. Bd. of Escambia Cty., Fla., P540 Fed. App'x 907, 911 (11th Cir. 2013) (upholding the district court's decision to strike affidavits that stated allegations without supporting facts). Johnston cites only his own belief and hearsay of Long's statements to him and to others in support. Doc. 71-1 at 2. He does not present a declaration from Long, any written records, or any other evidence. His declaration would not be admissible at trial, and therefore is insufficient at summary judgment to create an issue of fact that Johnston would ever have become the "agent of record" for the Energy Transfer accounts. Likewise, he presents no evidence that he should have been made the agent of record for Kroger, or that he somehow should receive a commission for any agreements with other companies to whom American Heritage has not sold policies.

Johnston has not presented any evidence to show that American Heritage ever determined that he was the efficient procuring cause of any contract, as required by the Agent Agreement. He has not presented evidence of any agreement that would support him receiving a commission. On this record, no reasonable jury could find that American Heritage is liable to Johnston for any commissions under the Agent Agreement.

As neither Johnston's original Declaration nor his Amended Declaration contain sufficient evidence to withstand American Heritage's Motion for

9

Summary Judgment, the Court need not reach the merits of American Heritage's Motion to Strike (Doc. 61).

Accordingly, it is hereby

**ORDERED:**

1. Plaintiff's Motion for Summary Judgment (Doc. 52) is **GRANTED**. A Declaratory Judgment shall be issued along with this Order.

2. Plaintiff's Objections and Motion to Strike (Doc. 61) is **DENIED** as moot.

**DONE AND ORDERED** in Jacksonville, Florida the 20th day of May, 2021.



TIMOTHY J. CORRIGAN
United States District Judge

agb
Copies:

Counsel of record